

So Ling Chan
44765 Via Pino
Temecula, CA 92590

The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

RE: Lead Case No.: 6:17-bk-19494-SC
    Jointly Administered with: Case No.: 6:17-bk-19495-SC
    Chapter 15 Cases

Date: November 27, 2017

Your Honor,
    Thank you for giving us the opportunity to tell our side of the story. It could only happen in America and not in most part of the world, especially communist China and China-controlled Hong Kong, where ordinary citizens have no such privilege.

    My name is So Ling Chan and I am the older sister of the two Debtors, Wai Hung Cheng and Wai Tak Cheng. I had no knowledge of their being sued until I received the Notice from Norton Rose Fulbright US LLP a few days ago. I knew a few years back that they had lost the family business and without warning disappeared, cutting off contacts with all other family members and relatives but their wives. Their whereabouts is unknown according to their wives. Our speculation of their disappearance is this: They must have felt ashamed of losing the family business and couldn't face the rest of the family or they worried about losing their freedom or, even worse, getting beaten by thugs hired by their creditors, which is not unusual in Hong Kong ever since British had left. One would have his passport withheld or even go to jail while waiting for the outcome of his trial.

Your Honor,
    Although I am not a party of this case, I do have issues I want to make, if I may.
One: My "Response" to the allegations raised by the Petitioners of this case.
Two: My "Petition" on behalf of all the innocent parties who suffer anxiety and inconvenience caused by this case – the listing agents, the owners of properties that have nothing to do with this case, myself included.

MY RESPONSES

PETITIONERS' ALLEGATIONS # 1:
    "The Petitioners have also identified certain questionable transaction, including the disposition of the residence at 44765 Via Pino."

1

**MY RESPONSE # 1:**

My husband and I started building our house in 2003 on the land we owned and we moved in in November 2005. We owned the house until June 2012 when we sold it to our son, Garwin Y. Chan, in order to save our house from foreclosure. Like a lot of people we had financial difficulty after the 2008 financial crisis and we couldn't make the $8,300 monthly payment without the help from our son. We couldn't refinance because we did not have income other than my husband's social security. But, the reduced monthly payment ($4,900) proved still unaffordable and our financial condition was getting worse. So my son sold the house to Wei Hu and his wife, Chanzi Wang in March 2013. With the proof in EXHIBIT "A" you can see the house at 44765 Via Pino has nothing whatsoever to do with the Debtors.

**PETITIONERS' ALLEGATIONS # 2:**

"The Debtors granted Power of Attorney to So Ling Chan, their sister."

**MY RESPONSE # 2:**

There is nothing unusual or fishy about this. People do it all the time among family members. For convenience we had used Power of Attorney to buy and sell land for our family and relatives who trusted me and resided oversea.

**PETITIONERS' ALLEGATIONS # 3:**

"It appears that So Ling Chan had quitclaimed those same vacant lots to the Debtors in 2008."

**MY RESPONSE # 3:**

Yes, I did. That was when we still could afford to be a little generous, and with the blessing of my husband, I gave my two brothers a lot each as an incentive to encourage them to immigrate to America. Here again, the use of quitclaim deed to transfer real property between family members is very common. It is the easiest and the cheapest way.

**PETITIONERS' ALLEGATIONS # 4:**

"The connection to the three relatives and the Debtors' ownership of the adjacent lots may be a part of a complicated series of intra-family transactions designed to hide the true ownership of the properties."

**MY RESPONSE # 4:**

True, the quitclaims were intra-family transactions, but they were not complicated nor were they designed to hide the true ownership of the properties. The petitioners' accusation is farfetched and without base, and it is not fair. Are all friends and family members who own properties next to each other suspects of questionable dealings? Is any law prohibiting that? If I knew my two brothers is going to be broke then, would I be that foolish as to give them land that eventually would be taken away from them by their creditors?

## MY PETITIONS:

1. Please stop the Petitioners of this case from creating problems for innocent people with accusations based on sloppy investigations or speculative insinuations. Due to the fact that they had sent the "Notice" to two separate listing agents, Jing Chen and Eva Chang, certain properties (house at 44765 Via Pino and 6.87 acres vacant land in Murrieta) which are absolutely unrelated to this case are forced to be taken out of the market, and thus cause harm to the owners and their listing agents.

2. Please deny the petitions requested by the Petitioners of this case on:
   Two vacant lots adjacent to 44765 Via Pino in Temecula, California.

## MY REASONS:

(1) Although those two lots are legally owned by the Debtors, they are gifts from my husband and me because they had never paid for them. So, it was not the Debtors' Creditors' money that acquired these two lots. Legally, the Debtors' Creditors may still have the right to claim these two lots, but I think it is morally wrong to take away someone's gifts, too.

(2) The Debtors had started offering their land for sale in 2013, way before they went broke. EXHIBIT "B" shows: They first bought ads in Chinese newspaper in Los Angeles, and then they listed the properties with Realty Center Inc. in Lake Elsinore, later with Keller Williams Realty in Temecula, and recently with Coldwell Banker in Acadia.

(3) The 26 lots has been sold on June 7, 2017 for $75,000, net $54,084 after paying delinquent property tax, interest, penalties, and closing cost. This amount has been used to pay back money owe us (EXHIBIT "C" & "D").
   One of the two lots, owned by Wai Hung Cheng, was sold on September 28, 2017 for $200,000, net $184,652 after closing cost. The entire proceed has been wired back to Debtors' wives (EXHIBIT "E" & "F").

Your Honor,

I know I have no right to appeal for the Debtors even though they are my brothers, because I am not an attorney nor am I a part of this case. I just want you, your Honor, to have a better understanding of the Debtors' situation.

Everybody has the chance to go broke, especially if he owns a business. And my two brothers are among those unfortunate ones. This is the first and only time they went broke (not by choice). They lost everything: their businesses, business properties, homes, cars, and bank accounts, and they disappeared suddenly and became homeless for reasons we could only speculate. It was a tragedy, for they left nothing for their wives and children but despair and hardship. One wife had to move in with her daughter and son-in-law, the other, with her sister and her family. One son had to quit UC Berkeley to find a part-time job and the youngest daughter, left Mountain View Community College to become a nanny. We all tried to help but there is only so much we can afford to do. We

1

only hope this case will be settled as soon as possible so that my brothers can go home to unite with their families. Nothing is worth the separation of their love ones.

Thank you, your Honor.

Yours Respectfully,

_____  11-28-2017

So Ling Chan

1

 # CENTRAL ESCROW, INC.

**4040 Barranca Parkway, Suite 260, Irvine, CA 92604**
**Tel: (949) 733-0022 • Fax: (949) 733-0028**

### SELLER'S CLOSING STATEMENT
### Final

| | |
|---|---|
| Escrow Number: 6021998-MC | Title Order Number: 23672 |
| Escrow Officer: Michelle Chen | Date: 03/06/2013 - 9:17:38AM |
| | Closing Date: 03/04/2013 |

Buyer/Borrower: Wei Hu and Chanzi Wang

Seller: Garwin Yen Chan

Property: 44765 Via Pino, Temecula, CA 92590

| | | | |
|---|---|---|---|
| **TOTAL CONSIDERATION** | | | 1,314,888.00 |
| **PRORATIONS/ADJUSTMENTS:** | | | |
| Property Tax @ 8,118.52 per 6 month(s) 3/04/2013 to 7/01/2013 | | | 5,277.04 |
| Association Dues @ 60.00 per 1 year(s) 3/04/2013 to 1/01/2014 | | | 49.51 |
| **COMMISSION(S):** | | | |
| Listing Broker: Hom Sothebys International Realty | | 39,446.64 | |
| Selling Broker: Presidential Real Estate | | 39,446.64 | |
| Reimbursment for Septic Inspection | | | 525.00 |
| **TITLE CHARGES** | | | |
| Owner's Premium for 1,314,888.00: Fidelity National Title | | 2,784.00 | |
| Sub-Escrow Fee: Fidelity National Title | | 62.50 | |
| County Transfer Tax: Fidelity National Title | | 1,446.50 | |
| **ESCROW CHARGES TO: Central Escrow, Inc.** | | | |
| Escrow Fee | | 2,830.00 | |
| Messenger Fee | | 60.00 | |
| Wire Fee | | 35.00 | |
| Document Preparation Fee | | 75.00 | |
| Courtesy Discount 30% off | | | 849.00 |
| **LOAN PAYOFF: Bofi Federal Bank** | | | |
| Principal Balance | 680,877.26 | | |
| Prepayment Penalty | 13,617.54 | | |
| Reconveyance Fee | 45.00 | | |
| Interest Per Diem From 2/01/2013 To 3/05/2013, 35 Days, @ 86.8300 | 3,039.05 | | |
| Statement / Demand Fee | 30.00 | | |
| Escrow In Payoff | -8,107.60 | | |
| Forwarding Fee | 45.00 | | |
| Fax Fee | 10.00 | | |
| Total Loan Payoff | | 689,556.25 | |
| **TAXES:** | | | |
| Property Tax to: Riverside County Tax Collector 2nd Half 2012-2013 #938-110-013-6 | | 8,118.52 | |
| **ADDITIONAL DISBURSEMENTS:** | | | |
| Natural Hazard Report Fee: Property I.D. | | 114.00 | |
| Home Owner's Warranty: Old Republic Home Warranty | | 475.00 | |
| Document & Transfer Fee: Ralston Management | | 325.00 | |
| **BALANCE DUE YOU** | | 536,813.50 | |
| **TOTALS** | | 1,321,588.55 | 1,321,588.55 |

OMB No. 2502-0265

**FINAL**
A. **SETTLEMENT STATEMENT (HUD-1)**

| B. | | E. | OF | LOAN | |
|---|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ | RHS | 3. ☒ | CONV. UNINS. | |
| 4. ☐ VA | 5. ☐ | CONV. INS. | | | |

| 6. FILE NUMBER: | 7. LOAN NUMBER |
|---|---|
| 6021998-MC | 0169898261 |

8. MORTGAGE INS. CASE NO.:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| | |
|---|---|
| D. NAME & ADDRESS OF BORROWER: | Wei Hu and Chanzi Wang<br>145 Weathervane, Irvine, CA 92603 |
| E. NAME & ADDRESS OF SELLER: | Garwin Yen Chan<br>44765 Via Pino, Temecula, CA 92590 |
| F. NAME & ADDRESS OF LENDER: | HSBC BANK USA N.A.<br>2929 Walden Avenue, Depew, NY 14043 |
| G. PROPERTY LOCATION: | 44765 Via Pino, Temecula, CA 92590 |
| H. SETTLEMENT AGENT: | Central Escrow, Inc.<br>PLACE OF SETTLEMENT: 4040 Barranca Parkway, #260, Irvine, CA 92604 (949) 733-0022 |
| I. SETTLEMENT DATE: | 3/04/2013 |

| J. | Summary of Borrower's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | | **400. Gross Amount Due To Seller:** | | |
| 101. Contract sales price | | | 401. Contract sales price | | 1,314,888.00 |
| 102. Personal property | | | 402. Personal property | | |
| 103. Settlement charges to borrower: (line 1400) | | | 403. Reimbursement for Septic Inspection | | 525.00 |
| 104. | | | 404. | | |
| 105. | | | 405. | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **Adjustments For Items Paid By Seller In Advance:** | | | **Adjustments For Items Paid By Seller In Advance:** | | |
| 106. City/town taxes | to | | 406. City/town taxes | to | |
| 107. County taxes | to | | 407. County taxes | 03/04/13 to 07/01/13 | 5,277.04 |
| 108. Assessments | to | | 408. Assessments | to | |
| 109. | | | 409. Association Dues 3/04/2013 to 1/01/2014 | | 49.51 |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| 113. | | | 413. | | |
| 114. | | | 414. | | |
| 115. | | | 415. | | |
| 116. | | | 416. | | |
| **120. Gross Amount Due From Borrower:** | | | **420. Gross Amount Due To Seller:** | | 1,320,739.55 |
| **200. Amounts Paid By Or In Behalf Of Borrower:** | | | **500. Reductions In Amount Due To Seller:** | | |
| 201. Deposit or earnest money | | | 501. Excess deposit (see instructions) | | |
| 202. Principal amount of new loan(s) | | | 502. Settlement charges to seller (line 1400) | | 86,251.28 |
| 203. Existing loan(s) taken subject to | | | 503. Existing loan(s) taken subject to | | |
| 204. | | | 504. Payoff 1st Mtg. Ln. BofI Federal Bank | | 689,556.25 |
| 205. | | | 505. Payoff 2nd Mtg. Ln. | | |
| 206. | | | 506. Property Tax-2nd Half 2012-2013 | | 8,118.52 |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **Adjustments For Items Unpaid By Seller:** | | | **Adjustments For Items Unpaid By Seller:** | | |
| 210. City/town taxes | to | | 510. City/town taxes | to | |
| 211. County taxes | to | | 511. County taxes | to | |
| 212. Assessments | to | | 512. Assessments | to | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| | | | | | |
| **220. Total Paid By/For Borrower:** | | | **520. Total Reductions In Amount Due Seller:** | | 783,926.05 |
| **300. Cash At Settlement From/To Borrower:** | | | **600. Cash At Settlement From/To Seller:** | | |
| 301. Gross amount due from borrower (line 120) | | | 601. Gross amount due to seller (line 420) | | 1,320,739.55 |
| 302. Less amount paid by/for borrower (line 220) | | | 602. Less reductions in amount due seller (line 520) | | 783,926.05 |
| 303. Cash (☐FROM) ☐TO) Borrower: | | 0.00 | 603. Cash (☒TO) (☐FROM) Seller: | | 536,813.50 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

**SETTLEMENT    CHARGES**                    Escrow: 6021998-MC

| | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|
| 00. Total Real Estate Broker Fees | | |
| **Division of Commision (line 700) As Follows:** | | |
| 701. $            39,446.64  to  Hom Sothebys International Realty | | |
| 702. $            39,446.64  to  Presidential Real Estate | | |
| 703. Commission paid at settlement | | 78,893.2 |
| 704. | | |
| **800. Items Payable In Connection With Loan:** | | |
| 801. Our origination charge                                (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen    (from GFE #2) | | |
| 803. Your adjusted origination charges                        (from GFE A) | | |
| 804. Appraisal fee to                                    (from GFE #3) | | |
| 805. Credit report to                                    (from GFE #3) | | |
| 806. Tax service to                                    (from GFE #3) | | |
| 807. Flood certification                                (from GFE #3) | | |
| 808. | | |
| 809. | | |
| 810. | | |
| 811. | | |
| 812. | | |
| 813. | | |
| 814. | | |
| 815. | | |
| 816. | | |
| 817. | | |
| 818. | | |
| 819. | | |
| **900. Items Required By Lender To Be Paid In Advance:** | | |
| 901. Daily interest charges from        to        @ $        /day (0 days)    (from GFE #10) | | |
| 902. Mortgage insurance premium        for    mo. to            (from GFE #3) | | |
| 903. Homeowner's insurance        for    yrs. to            (from GFE #11) | | |
| 904. Flood insurance premium        for    yrs. to | | |
| 905. | | |
| 906. | | |
| **1000. Reserves Deposited With Lender:** | | |
| 1001. Initial deposit for your escrow account            (from GFE #9) | | |
| 1002. Homeowner's insurance        0 months @ $        0.00 per month | | |
| 1003. Mortgage insurance        0 months @ $        0.00 per month | | |
| 1004. City property taxes        0 months @ $        0.00 per month | | |
| 1005. County property taxes        0 months @ $        0.00 per month | | |
| 1006. Annual assessments        0 months @ $        0.00 per month | | |
| 1007. Flood insurance        0 months @ $        0.00 per month | | |
| 1008.        0 months @ $        0.00 per month | | |
| 1009. Aggregate Adjustment | | |
| 1010. | | |
| **1100.  Title Charges** | | |
| 1101. Title services and lender's title insurance            (from GFE #4) | | |
| 1102. Settlement or closing fee to Central Escrow, Inc. | | 2,830.0 |
| 1103. Owner's title insurance Fidelity National Title        (from GFE #5) | | 2,784.0 |
| 1104. Lender's title insurance | | |
| 1105. Lender's title policy limit $ | | |
| 1106. Owner's title policy limit $ 1,314,888.00 | | |
| 1107. Agent's portion of the total title insurance premium | | |
| 1108. Underwriter's portion of the total title insurance premium | | |
| 1109. Sub-Escrow Fee to Fidelity National Title | | 62.5 |
| 1110. Messenger Fee to Central Escrow, Inc. | | 60.0 |
| 1111. Wire Fee to Central Escrow, Inc. | | 35.0 |
| 1112. Document Preparation Fee to Central Escrow, Inc. | | 75.0 |
| 1113. Courtesy Discount 30% off to Central Escrow, Inc. | | (849.00 |
| 1114. | | |
| **1200. Government Recording and Transfer Charges:** | | |
| 1201. Government recording charges                    (from GFE #7) | | |
| 1202. Deed $        0.00        Mortgage $        0.00        Releases $        0.00 | | |
| 1203. Transfer taxes                                (from GFE #8) | | |
| 1204. City/County tax/stamps  Deed $    1446.50            Mortgage $    0.00 | | 1,446.5 |
| 1205. State tax/stamps        Deed $        0.00            Mortgage $    0.00 | | |
| 1206. | | |
| 1207. | | |
| **1300. Additional Settlement Charges:** | | |
| 1301. Required services that you can shop for            (from GFE #6) | | |
| 1302. Natural Hazard Report Fee to Property I.D. | | 114.0 |
| 1303. Document & Transfer Fee to Ralston Management | | 325.0 |
| 1304. Home Owner's Warranty to Old Republic Home Warranty | | 475.0 |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| **1400.  Total Settlement Charge** (Enter on line 103, Section J - and - line 502, Section K) | | 86,251.2 |

| ATTACHMENT TO HUD 1 | Escrow No.: | 6021998-MC |
|---|---|---|
| Settlement Date:  3/04/2013 | Title No.: | 23672 |
| | Page: | 1 |

## EXHIBIT A: Tax Payment Breakdown

Breakdown of Tax Payments:

County Taxes, Tax Account: 938-110-013-6

| Year | Amount | Interest | Penalty |
|---|---|---|---|
| 2nd Half 2012-2013 | $8118.52 | | |

## EXHIBIT B: (HUD Section 500)                                                    Seller Amount

Reductions In Amount Due To Seller: - Loan Payoff Breakdown:

**Bofi Federal Bank**

| | | |
|---|---|---|
| Prepayment Penalty To: Bofi Federal Bank | | 13,617.54 |
| Reconveyance Fee To: Bofi Federal Bank | | 45.00 |
| Interest Per Diem From  2/01/2013 to  3/05/2013 @ $ | 86.8300 To: Bofi Federal Bank | 3,039.05 |
| Statement / Demand Fee To: Bofi Federal Bank | | 30.00 |
| Principal Balance To: Bofi Federal Bank | | 680,877.26 |
| Escrow In Payoff To: Bofi Federal Bank | | -8,107.60 |
| Forwarding Fee To: Bofi Federal Bank | | 45.00 |
| Fax Fee To: Bofi Federal Bank | | 10.00 |
| | Total: | 689,556.25 |

OMB Approval No. 2502-0265

## A. Settlement Statement (HUD-1)
### FINAL

| B.  Type of Loan | | | | |
|---|---|---|---|---|
| 1. ☐ FHA   2. ☐ RHS   3. ☒ Conv. Unins. | | 6. File Number: 540-1102141-TZ | 7. Loan Number: 3320617 | 8. Mortgage Insurance Case Number: |
| 4. ☐ VA   5. ☐ Conv. Ins. | | | | |

C. Note: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

( 540-1102141-TZ/ 56)

| D.  Name and Address of Borrower: | E.  Name and Address of Seller: | F.  Name and Address of Lender: |
|---|---|---|
| Garwin Yen Chan 44765 Via Pino Temecula, CA 92590 | | BOFI Federal Bank 12777 High Bluff Drive # 150 San Diego, CA 92130 |

| G.  Property Location: | H.  Settlement Agent:  Advantage Title, Inc.            9516162323 | I.  Settlement Date: |
|---|---|---|
| 44765 Via Pino Temecula, CA 92590 Riverside County, California | 29999 Technology Drive # 305 Murrieta, CA  92563 | June 19, 2012 |
| | Place of Settlement: 29999 Technology Drive # 305 Murrieta, CA 92563 | Disbursement Date: June 20, 2012 |

| J.  Summary of Borrower's Transaction | | K.  Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 26,505.25 | 403. | |
| 104. Payoff of first mortgage loan | 657,939.67 | 404. | |
| 105. Payoff of second mortgage loan | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/Town taxes | | 406. City/Town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross amount due from Borrower** | 684,444.92 | **420. Gross amount due to Seller** | |
| **200. Amounts Paid by or in Behalf of Borrower** | | **500. Reductions in Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 687,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town taxes | | 510. City/Town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total paid by/for Borrower** | 687,000.00 | **520. Total reduction amount due Seller** | |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement from/to Seller** | |
| 301. Gross amount due from Borrower (Line 120) | 684,444.92 | 601. Gross amount due to Seller (Line 420) | |
| 302. Less amount paid by/for Borrower (Line 220) | ( 687,000.00 ) | 602. Less reductions due Seller (Line 520) | ( ) |
| **303. CASH TO BORROWER** | 2,555.08 | **603. CASH TO/FROM SELLER** | |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

Certified to be a true and correct copy of the original.
Advantage Title, Inc.

Advantage Title, Inc.

**RECORDING REQUESTED BY:**
Advantage Title, Inc.

**When Recorded Mail Document To:**
Garwin Yen Chan
44765 Via Pino
Temecula, CA 92590

Escrow No.: 540-1102141-TZ
Title No.: 510-1104220-50

**DOC # 2012-0282355**
06/19/2012 02:36 PM Fees: $28.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: TVERBA

APN: 938-110-013

TRA 082016

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

The undersigned grantor(s) declare(s) Documentary transfer tax is $ 0

- ☐ computed on full value of property conveyed, or
- ☐ computed on full value less value of liens or encumbrances remaining at time of sale,
- ☐ Unincorporated area: in the City of Temecula

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,**
Shu Sun Chan and So Ling Chan, husband and wife as joint tenants
**hereby GRANT(S) to**
Garwin Yen Chan, a single man
**the following described real property:**
See Exhibit "A" attached

Dated: December 13, 2011

State of California
County of _Riverside_
On _June 14, 2012_ before me,
_Elizabeth R Wood_, Notary Public,
personally appeared _Shu Sun Chan_
_and So Ling Chan_
who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and
correct.
Witness my hand and official seal.

Signature _Elizabeth R Wood_ (Seal)

_Shu Sun Chan_

_So Ling Chan_

ELIZABETH R. WOOD
COMM. # 1901466
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
COMM. EXPIRES SEPT. 16, 2014

DOC #: 2011-0098169
03/03/2011 02:11P Fee:28.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



**RECORDING REQUESTED BY:**
Garwin Yen Chan

**AND WHEN RECORDED MAIL TO:**

Shu Sun and So Ling Chan and Garwin Yen Chan
44765 Via Pino
Temecula, CA 92590

| | C |
|---|---|
| | 602 |

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| \ | | | 2 | | | | | | 5 |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | T: | | CTY | UNI | |

---

| Title Order No.: n/a | | Escrow No.: n/a |
|---|---|---|

## GRANT DEED

**THE UNDERSIGNED GRANTOR(S) DECLARE(S)**
**DOCUMENTARY TRANSFER TAX is $0.00**
[ ] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area    [X] City of Temecula AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Shu Sun Chan and So Ling Chan, Trustees U/D/T dated July 28th, 2009.**

hereby GRANT(s) to: **Shu Sun Chan and So Ling Chan, Husband and Wife as Joint Tenants and Garwin Yen Chan, a Single Man, all as Joint Tenants**

the real property in the City of Temecula, County of Riverside, State of California, described as:

Legal Description attached hereto as Exhibit "A" and made a part hereof.

Also Known as:  44765 Via Pino, Temecula, CA  92590
AP#: 938110013-6

"This is a bonafide gift and the grantor received nothing in return, R & T 11911."

DATED March 3, 2011
STATE OF CALIFORNIA
COUNTY OF  *Riverside*
On *3-3-11*
before me, *Linda E Keeney*
A Notary Public in and for said State personally appeared
*Shu Sun Chan and*
*So Ling Chan*
who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State
of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Shu Sun Chan and So Ling Chan, Trustees U/D/T
dated July 28th, 2009.

BY: *Shu Sun Chan*
By: Shu Sun Chan, trustee

BY: *So Li Chan*
By: So Ling Chan, trustee

LINDA E. KEENEY
Commission # 1766245
Notary Public - California
Riverside County
My Comm. Expires Sep 8, 2011

Signature *Linda E Keeney*                    (Seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

|   | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | PROJECT: DH1-MISSION OAKS BANK | | | | | | L # : 77000546 |
| 2 | DATE | CHECK # | DRAW | INTEREST | FEES | FUNDS U | FUNDS AV |
| 3 | 2/21/2003 | | | | - | - | 778,845.00 |
| 4 | 10/10/2003 | | | | 14,205.00 | 14,205.00 | 764,640.00 |
| 5 | 11/12/2003 | | | 63.05 | | 14,268.05 | 764,576.95 |
| 6 | 12/12/2003 | | | 72.69 | | 14,340.74 | 764,504.26 |
| 7 | 1/12/2004 | | | 70.72 | | 14,411.46 | 764,433.54 |
| 8 | 2/12/2004 | | 106,620.00 | 73.44 | | 121,104.90 | 657,740.10 |
| 9 | 3/12/2004 | | | 617.13 | | 121,722.03 | 657,122.97 |
| 10 | 4/12/2004 | | | 580.26 | | 122,302.29 | 656,542.71 |
| 11 | 5/12/2004 | | | 623.23 | | 122,925.52 | 655,919.48 |
| 12 | 6/12/2004 | | | 606.21 | | 123,531.73 | 655,313.27 |
| 13 | 7/12/2004 | | 1,856.00 | 629.50 | | 126,017.23 | 652,827.77 |
| 14 | 8/12/2004 | | 104,764.00 | 792.85 | | 231,574.08 | 547,270.92 |
| 15 | 10/12/2004 | | | 1,180.06 | | 232,754.14 | 546,090.86 |
| 16 | 10/12/2004 | | | 1,186.11 | 2,725.00 | 236,665.25 | 542,179.75 |
| 17 | 11/12/2004 | | 106,620.00 | 1,387.60 | | 344,672.85 | 434,172.15 |
| 18 | 12/10/2004 | | 106,620.00 | 1,756.40 | | 453,049.25 | 325,795.75 |
| 19 | 1/12/2005 | | | 2,026.10 | | 455,075.35 | 323,769.65 |
| 20 | 2/11/2005 | | | 2,415.27 | | 457,490.62 | 321,354.38 |
| 21 | 3/28/2005 | | | 2,503.67 | | 459,994.29 | 318,850.71 |
| 22 | 4/12/2005 | | 106,620.00 | 2,475.53 | 500.00 | 569,589.82 | 209,255.18 |
| 23 | 5/12/2005 | | 106,620.00 | 2,757.94 | | 678,967.76 | 99,877.24 |
| 24 | 5/21/2005 | | | 3,613.13 | | 682,376.87 | 96,468.13 |
| 25 | 6/27/2005 | | | 3,409.11 | | 775,231.87 | 3,613.13 |
| 26 | 7/12/2005 | | 92,855.00 | | | 775,231.87 | 3,613.13 |
| 27 | 7/12/2005 | | | | | 775,231.87 | 3,613.13 |
| 28 | 8/4/2005 | | | | | 775,231.87 | 3,613.13 |
| 29 | | | - | - | - | 775,231.87 | 3,613.13 |
| 30 | | | | | | 775,231.87 | 3,613.13 |
| 31 | | | | | | 775,231.87 | 3,613.13 |
| 32 | | | | | | 775,231.87 | 3,613.13 |
| 33 | | | | | | 775,231.87 | 3,613.13 |
| 34 | | | | | | 775,231.87 | 3,613.13 |
| 35 | | | | | | 775,231.87 | 3,613.13 |
| 36 | | | | | | 775,231.87 | 3,613.13 |
| 37 | | | | | | 775,231.87 | 3,613.13 |
| 38 | | | | | | - | - |
| 39 | | | 732,575.00 | 28,840.00 | 17,430.00 | | |
| 40 | | | | | | | |
| 41 | | | 660767.66 | 46270 | | 71807.34 | |
| 42 | | | | | | | |
| 43 | | | 71807.34 | | | | |
| 44 | | | | | | | |
| 45 | | | | | | | |
| 46 | | | | | | | |
| 47 | | | | | | | |
| 48 | | | | | | | |
| 49 | | | | | | | |

| | H | I | J | K | L | M | N |
|---|---|---|---|---|---|---|---|
| 1 | **PROJECT: DH1-MISSION OAKS BANK** | | | | | | L # : 77000546 |
| 2 | **DATE** | **PAYEES** | **CK #** | **AMOUNT** | **OTHERS** | **DRAW** | **BALANCE** |
| 3 | 10/10/2003 | Mission Oak Nat'l Bank | | | 14,205.00 | | (14,205.00) |
| 4 | 11/12/2003 | Mission Oak Nat'l Bank | | | 63.05 | | (14,268.05) |
| 5 | 12/12/2003 | Mission Oak Nat'l Bank | | | 72.69 | | (14,340.74) |
| 6 | 1/12/2004 | Mission Oak Nat'l Bank | | | 70.72 | | (14,411.46) |
| 7 | 1/22/2004 | Precision Set Up | 7396 | 15,002.00 | | | (29,413.46) |
| 8 | 2/12/2004 | Mission Oak Nat'l Bank | | | 73.44 | | 77,133.10 |
| 9 | 2/27/2004 | RCP Block & Brick | 7397 | 11,973.00 | | | 65,160.10 |
| 10 | 2/27/2004 | J & J Builders | 7398 | 15,647.00 | | | 49,513.10 |
| 11 | 3/9/2004 | Kish Waterproofing | 7399 | 5,522.00 | | | 43,991.10 |
| 12 | 3/12/2004 | Mission Oak Nat'l Bank | | | 617.13 | | 43,373.97 |
| 13 | 3/18/2004 | TM Construction | 7400 | 44,100.00 | | | (726.03) |
| 14 | 4/12/2004 | Mission Oak Nat'l Bank | | | 580.26 | | (1,306.29) |
| 15 | 5/12/2004 | Mission Oak Nat'l Bank | | | 623.23 | | (1,929.52) |
| 16 | 6/12/2004 | Mission Oak Nat'l Bank | | | 606.21 | | (2,535.73) |
| 17 | 6/22/2004 | Precision Set Up | 7401 | 8,232.00 | | | (10,767.73) |
| 18 | 6/22/2004 | TM Construction | 7402 | 8,000.00 | | | (18,767.73) |
| 19 | 7/10/2004 | TM Construction | 7403 | 6,800.00 | | | (25,567.73) |
| 20 | 7/12/2004 | Mission Oak Nat'l Bank | | | 629.50 | | (24,341.23) |
| 21 | 8/10/2004 | George & Krogh Welding | 7404 | 6,400.00 | | | (30,741.23) |
| 22 | 8/12/2004 | Mission Oak Nat'l Bank | | | 792.85 | | 73,229.92 |
| 23 | 8/18/2004 | Superior Ready Mix Concrete | 7405 | 4,089.38 | | | 69,140.54 |
| 24 | 8/18/2004 | | | - | | | 69,140.54 |
| 25 | 9/21/2004 | TM Construction | 7407 | 5,000.00 | | | 64,140.54 |
| 26 | 9/22/2004 | George & Krogh Welding | 7408 | 3,160.00 | | | 60,980.54 |
| 27 | 9/25/2004 | Superior Ready Mix Concrete | 7409 | 6,901.60 | | | 54,078.94 |
| 28 | | | | | | | 54,078.94 |
| 29 | 9/25/2004 | Precision Set Up | 7411 | 6,558.17 | | | 47,520.77 |
| 30 | 9/25/2004 | Bob Spilman Plumbing | 7412 | 12,530.00 | 1,180.06 | | 33,810.71 |
| 31 | | | | - | 1,186.11 | | 32,624.60 |
| 32 | 9/30/2004 | George & Krogh Welding | 7414 | 49,132.13 | 2,725.00 | | (19,232.53) |
| 33 | 10/7/2004 | Olson Construction | 7415 | 21,560.23 | | | (40,792.76) |
| 34 | 10/7/2004 | TM Construction | 7416 | 14,000.00 | | | (54,792.76) |
| 35 | 10/13/2004 | Andy's Glass | 7417 | 13,973.50 | | | 37,853.74 |
| 36 | 10/14/2004 | Andy's Glass | 7418 | 2,757.00 | 1,387.60 | | 33,709.14 |
| 37 | | | 7419 | - | | | 33,709.14 |
| 38 | 11/1/2004 | TM Construction | 7420 | 15,000.00 | | | 18,709.14 |
| 39 | 11/8/2004 | TM Construction | 7421 | 8,000.00 | | | 10,709.14 |
| 40 | 11/30/2004 | TM Construction | 7422 | 10,000.00 | 1,756.40 | | 105,572.74 |
| 41 | 11/30/2004 | TM Construction | 7423 | 10,000.00 | | | 95,572.74 |
| 42 | 12/1/2004 | Holland Window,Inc. | 7424 | 7,185.85 | | | 88,386.89 |
| 43 | 12/6/2004 | George & Krogh Welding | 7425 | 15,300.60 | | | 73,086.29 |
| 44 | 12/6/2004 | Andy's Glass | 7426 | 3,047.00 | | | 70,039.29 |
| 45 | 12/6/2004 | Andy's Glass | 7427 | 12,721.50 | | | 57,317.79 |
| 46 | 12/6/2004 | Andy's Glass | 7428 | 2,500.00 | | | 54,817.79 |
| 47 | 12/6/2004 | Andy's Glass | 7429 | 17,176.00 | | | 37,641.79 |
| 48 | 12/10/2004 | Mission Oak Nat'l Bank | | | | | 144,261.79 |
| 49 | 12/27/2004 | Mission Oak Nat'l Bank | | | 2026.10 | | 142,235.69 |

| | H | I | J | K | L | M | N |
|---|---|---|---|---|---|---|---|
| 50 | 12/31/2004 | TM Construction | 7430 | 18,525.55 | | | **123,710.14** |
| 51 | 1/19/2005 | Revco Solar | 7431 | 7,456.00 | | | **116,254.14** |
| 52 | 1/19/2005 | Fireplace Distributors | 7432 | 4,648.00 | | | **111,606.14** |
| 53 | 1/26/2005 | Mission Oak Nat'l Bank | | | 2415.27 | | **109,190.87** |
| 54 | 2/9/2005 | Pacific Sales | 7433 | 1,500.00 | | | **107,690.87** |
| 55 | 2/11/2005 | Pacific Sales | 7434 | 2,600.00 | | | **105,090.87** |
| 56 | 2/11/2005 | Pacific Sales | 7435 | 2,891.89 | | | **102,198.98** |
| 57 | 2/16/2005 | TM Construction | 7436 | 8,253.65 | | | **93,945.33** |
| 58 | 2/16/2005 | Amber A/C | 7437 | 7,915.00 | | | **86,030.33** |
| 59 | 2/18/2005 | Canac Kitchen | 7438 | 9,200.00 | | | **76,830.33** |
| 60 | 2/19/2005 | Andy's Glass | 7439 | 4,300.00 | | | **72,530.33** |
| 61 | 1/19/2005 | Andy's Glass | 7440 | 200.00 | | | **72,330.33** |
| 62 | 2/19/2005 | Andy's Glass | 7441 | 707.00 | | | **71,623.33** |
| 63 | 2/28/2005 | Mission Oak Nat'l Bank | | | 2503.67 | | **69,119.66** |
| 64 | 3/28/2005 | Mission Oak Nat'l Bank | | | 2475.53 | | **66,644.13** |
| 65 | 4/11/2005 | Amber A/C | 7442 | 8,940.00 | | | **57,704.13** |
| 66 | 4/11/2005 | TM Construction | 7443 | 12,213.23 | | | **45,490.90** |
| 67 | 4/11/2005 | Dan's Roofing | 7444 | 14,000.00 | | | **31,490.90** |
| 68 | 4/11/2005 | Andy's Glass | 7445 | 3,640.00 | | | **27,850.90** |
| 69 | 4/12/2005 | Mission Oak Nat'l Bank | | | 500.00 | | **133,970.90** |
| 70 | 4/20/2005 | Bob Spilman Plumbing | 12386 | 17,900.00 | | | **116,070.90** |
| 71 | 4/20/2005 | Lido Interior Drywall | 12387 | 15,760.00 | | | **100,310.90** |
| 72 | 4/20/2005 | Banker Insulation | 12388 | 6,813.00 | | | **93,497.90** |
| 73 | 4/20/2005 | Crockett Electric | 12389 | 19,950.00 | | | **73,547.90** |
| 74 | 4/20/2005 | Andy's Glass | 12390 | 13,954.00 | | | **59,593.90** |
| 75 | 4/26/2005 | Mission Oak Nat'l Bank | | | 2757.94 | | **56,835.96** |
| 76 | 5/9/2005 | Mission Oak Nat'l Bank | | | | | **163,455.96** |
| 77 | 5/12/2005 | TM Construction | 12391 | 4,691.86 | | | **158,764.10** |
| 78 | 5/15/2005 | Lido Interior Drywall | 12392 | 11,820.00 | | | **146,944.10** |
| 79 | 5/27/2005 | Lido Interior Drywall | 12393 | 1,600.00 | | | **145,344.10** |
| 80 | 5/27/2005 | Complete lath & plastering | 12394 | 18,500.00 | 3613.13 | | **123,230.97** |
| 81 | 6/3/2005 | Lido Interior Drywall | 12395 | 7,880.00 | | | **115,350.97** |
| 82 | 6/8/2005 | Canac Kitchen | 12396 | 9,200.00 | | | **106,150.97** |
| 83 | 6/8/2005 | Complete lath & plastering | 12397 | 18,500.00 | | | **87,650.97** |
| 84 | 6/25/2005 | Lido Interior Drywall | 12398 | 3,940.00 | 3409.11 | | **80,301.86** |
| 85 | 6/27/2005 | Dan's Roofing | 12399 | 7,000.00 | | | **73,301.86** |
| 86 | 7/7/2005 | Complete lath & plastering | 123400 | 8,500.00 | | | **64,801.86** |
| 87 | | Pacific Sales | 123401 | 15,115.05 | | | **49,686.81** |
| 88 | 7/21/2005 | Dan's Roofing | 12402 | 6,346.00 | | | **43,340.81** |
| 89 | | | 12403 | | | | **43,340.81** |
| 90 | 8/3/2005 | Fresh Water Systems | 12404 | 4,038.47 | | | **132,157.34** |
| 91 | | | | | | | **132,157.34** |
| 92 | | | | | | | **132,157.34** |
| 93 | | | | 660,767.66 | 46,270.00 | 732,575.00 | |
| 94 | | | | | | | |

# PROJECT: DH1-AGENCY FEES

| AGENCY | SUBJECT | | FEES | CK NO. | DATE |
|---|---|---|---|---|---|
| RC BLDG & SAFETY | | | | | |
| | BLDG LMS SURCHARGE FEE | BRS020325 | 10.86 | 1064 | 1/23/2002 |
| | DEPOSIT BASE BLDG FEE | BRS020325 | 724.13 | 1064 | 1/23/2002 |
| | BLDG LMS SURCHARGE FEE | BRS020325 | 20.94 | M/C | 4/30/2002 |
| | DEPOSIT BASE BLDG FEE | BRS020325 | 1,396.06 | M/C | 4/30/2002 |
| | BLDG LMS SURCHARGE FEE | BRS020325 | 22.17 | 6719 | 6/20/2002 |
| | DEPOSIT BASE BLDG FEE | BRS020325 | 1,477.83 | 6719 | 6/20/2002 |
| | BLDG LMS SURCHARGE FEE | BRS020325 | 7.62 | 6835 | 10/28/2002 |
| | DEPOSIT BASE BLDG FEE | BRS020325 | 508.30 | 6835 | 10/28/2002 |
| | BLDG LMS SURCHARGE FEE | BRS020325 | 5.63 | 6883 | 12/11/2002 |
| | DEPOSIT BASE BLDG FEE | BRS020325 | 375.00 | 6883 | 12/11/2002 |
| | BLDG LMS SURCHARGE FEE | BRS020325 | 3.55 | 6916 | 1/9/2003 |
| | DEPOSIT BASE BLDG FEE | BRS020325 | 236.93 | 6916 | 1/9/2003 |
| | BLDG LMS SURCHARGE FEE | BRS020325 | 2.25 | M/C | 2/5/2003 |
| | DEPOSIT BASE BLDG FEE | BRS020325 | 150.00 | M/C | 2/5/2003 |
| | BLDG LMS SURCHARGE FEE | BRS020325 | 7.50 | KWB10033 | 4/23/2003 |
| | DEPOSIT BASE BLDG FEE | BRS020325 | 500.00 | KWB10033 | 4/23/2003 |
| | BLDG LMS SURCHARGE FEE | BRS020325 | 43.46 | KWB10077 | 11/25/2003 |
| | DEPOSIT BASE BLDG FEE | BRS020325 | 1,621.66 | KWB10077 | 11/25/2003 |
| | DEPOSIT BASE BLDG FEE | BRS020325 | 765.00 | KWB10208 | 4/11/2005 |
| RC ENV-HEALTH DEPT. | TLMA FEE | | 116.73 | 1060 | 1/17/2002 |
| | SEWAGE SYSTEM FEES | | 470.96 | M/C | 1/15/2003 |
| | LABELS & MAPS | | 68.00 | CASH | 4/30/2003 |
| | | | **655.69** | | |
| RC TRAN.& LAND MGMT | ENVIRONMENTAL ASSESSMENT FEE | | 1,023.91 | M/C | 11/25/2002 |
| | | | **981.39** | | |
| RIVERSIDE COUNTY TLMA | INTERIM OPEN SPACE FEE | | 472.00 | 6862 | 11/25/2002 |
| | | | **472.00** | | |
| RIVERSIDE COUNTY TLMA | DEVELOPMENT IMPACT FEE | | 4,353.00 | 6862 | 11/25/2002 |
| | TUMF FEE | | 7,248.00 | 10289 | 8/12/2005 |

| | | | | |
|---|---|---|---|---|
| | | **11,601.00** | | |
| RIVERSIDE CTY FIRE DEPT | FEES | 302.00 | 7622 | 8/30/2005 |
| | | **302.00** | | |
| | **TOTAL** | | | |
| RACNH WATER DISTRICT | ASSESSMENTFOR 5 LOTS | 57,939.00 | 6823 | 10/11/2002 |
| | | 750.00 | 7106 | 9/12/2003 |
| | | 1,548.58 | 10072 | 11/12/2003 |
| | | 524.16 | 10082 | 12/8/2003 |
| | | 488.91 | 10086 | 1/8/2004 |
| | | 36.81 | 10101 | 2/12/2004 |
| | | 34.70 | 10108 | 3/8/2004 |
| | | 8,200.00 | 10106 | 3/9/2004 |
| | WATER METER | 10,910.00 | 10152 | 9/16/2004 |
| | | 62.31 | 10180 | 12/28/2004 |
| SEC | | 11,034.96 | 10131 | 6//8/04 |
| | | 891.37 | 10161 | 10/29/2004 |
| | | 841.73 | 10285 | 8/8/2005 |
| VERIZON | | - | | |
| M.V. SCHOOL DISTRICT | SCHOOL IMPACT MITIGATION FEE | 1,289.00 | 6861 | 11/25/2002 |
| SANTA ROSA C.S.D. | Deposit | 700.00 | 6699 | 5/28/2002 |
| | Deposit | 2,000.00 | 61500911 | 10/13/2004 |
| | | 207.40 | 6699 | 5/28/2002 |
| | | | 12740 | 3/7/2005 |
| | | | 12739 | 3/7/2005 |
| | | 2,655.02 | 723801498 | 8/15/2005 |
| STATE WATER RESOURCE BOARD | | 700.00 | 7060 | 7/7/2003 |
| | | 498.00 | 10140 | 7/12/2004 |
| | | 243.00 | 10277 | 8/1/2005 |
| State Farm Insurance | | 2,050.00 | 10148 | 9/13/2004 |
| | | **3,491.00** | | |
| | **TOTAL** | | | |
| Mission Oaks Nat'l Bk | Appraisal Fees | 400.00 | 6950 | 2/21/2003 |
| | Loan Fees | 14,205.00 | | 9/29/2003 |
| | | 2,725.00 | | 10/12/2004 |
| | | **16,930.00** | | |
| | Interest | 63.05 | | 10/27/2003 |

| Amount | Check No. | Date |
|---|---|---|
| 72.69 | | 11/26/2003 |
| 70.72 | | 12/26/2003 |
| 73.44 | | 1/26/2004 |
| 617.13 | | 2/26/2004 |
| 580.26 | | 3/26/2004 |
| 623.23 | | 4/26/2004 |
| 606.20 | | 5/26/2004 |
| 629.50 | | 6/28/2004 |
| 792.85 | | 7/26/2004 |
| 1,180.06 | | 8/26/2004 |
| 1,186.11 | | 9/27/2004 |
| 1,387.60 | | 10/26/2004 |
| 1,756.40 | | 11/26/2004 |
| 2,026.10 | | 12/27/2004 |
| 2,415.27 | | 1/26/2005 |
| 2,503.67 | | 2/28/2005 |
| 2,475.53 | | 3/28/2005 |
| 500.00 | | 4/8/2005 |
| 2,757.94 | | 5/12/2005 |
| 3,409.11 | | 6/27/2005 |
| 645.51 | 10258 | 7/12/2005 |
| 4,054.62 | | 7/12/2005 |
| 5,088.72 | 10281 | 8/4/2005 |

**TOTAL**

**G.TOTAL     176,515**

# PROJECT: DH1-PROFESSIONALS

| COMPANY | PROJECT | PRICE | | CK NO. | DATE |
|---------|---------|-------|---|--------|------|
| CAD DESIGN CTR | ARCHITECTURAL DESIGN | 8,096 | | 6142 | 10/28/2000 |
| | | | | 6186 | 12/20/2000 |
| | | | | 6436 | 8/22/2001 |
| | | | | 6498 | 10/10/2001 |
| | | | | CASH | 12/12/2001 |
| | | | | 6665 | 4/15/2002 |
| | | | | 6720 | 6/20/2002 |
| | | | | 6721 | 6/21/2002 |
| | | | | NOT PAID | |
| WEI PEI | STRUCTURAL ENGINEERING | 10,300 | | 6434 | 8/22/2001 |
| | | | | 6540 | 11/28/2001 |
| | | | | 6755 | 7/30/2002 |
| | | | | 6834 | 10/28/2002 |
| | | | | 10134 | 6/21/2004 |
| | | | | 10185 | 1/10/2005 |
| | | | | 10185 | 1/10/2005 |
| MEGALAND | DESIGN GRADING PLAN & ROAD | 6,790 | | 6300 | 4/2/2001 |
| | | | | | 8/22/2001 |
| | | | | 6499 | 10/10/20( |
| | | | | 6524 | 11/6/2( |
| | | | | 6756 | 7/30 |
| | | | | 6857 | 11/ |
| | | | | 6914 | |
| | | | | 10048 | |
| | | | | 10080 | |
| | | | | 10165 | |
| | | | | 1015 | |
| GUNVANT THAKKAR | CIVIL & SOIL ENGINEER | | | | |
| DENNIS JANDA | AERIAL SURVEY | | | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | 10162 | 10/29/2004 |
| | | | | 10169 | 11/19/2004 |
| | | | | | |
| EnGEN CORP. | SOIL ENGINEERING & REPORTS | | | 6464 | 9/12/2001 |
| | | | | 6833 | 10/28/2002 |
| | | | | 6913 | 1/8/2003 |
| | | | | 10063 | 10/9/2003 |
| | | | | 10066 | 10/27/2003 |
| | | | | 10103 | 2/12/2004 |
| | | | | 10117 | 4/21/2004 |
| | | | | 10127 | 6/7/2004 |
| | | | | 10349 | 9/27/2005 |
| | | | | | |
| RUSS OLSON | GENERAL CONTRACTOR | | | 7415 | 10/7/2004 |
| | EQUIPMENT RENTAL | | | 10143 | 8/10/2004 |



CALIFORNIA
ASSOCIATION
OF REALTORS®

**VACANT LAND LISTING AGREEMENT**
(C.A.R. Form VLL, Revised 7/13)

Wei Hong Cheng

1. **EXCLUSIVE AUTHORIZATION:** ("Owner")
hereby employs and grants _____Keller Williams Realty_____ ("Broker") beginning
(date) _____December 12, 2014_____ and ending at 11:59 P.M. on (date) _____December 11, 2015_____ ("Listing Period") the
exclusive and irrevocable right to: ☒SELL, ☐LEASE, ☐EXCHANGE, ☐OPTION, or ☐OTHER _____
the real property in the City of _____Temecula_____ , County of _____Riverside_____ , California, Assessor's
Parcel No.: _____915-050-008_____ , described as: _____0 Via Pino_____ ("Property").

2. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in an agreement between Owner and transferee, all fixtures and
fittings that are attached to the Property are included, and personal property items are excluded from the price.
**ADDITIONAL ITEMS EXCLUDED:** _____ .
**ADDITIONAL ITEMS INCLUDED:** _____ .
Owner intends that the above items be excluded or included in listing the Property, but understands that: (i) the Agreement
between owner and transferee supersedes any intention expressed above and will ultimately determine which items are excluded
and included in the transaction; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or
inclusions will be in the Agreement between Owner and transferee.

3. **LISTING PRICE AND TERMS:**
   **A.** The listing price shall be _____Three Hundred Eighty-Eight Thousand_____ Dollars ($ _____388,000.00_____ ).

   **B.** Additional Terms: _____

4. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may
   be negotiable between Owner and Broker (real estate commissions include all compensation and fees to Broker).**
   **A.** Owner agrees to pay to Broker as compensation for services irrespective of agency relationship(s): ☒ _____5,000_____ percent of the
   listing price (or if an agreement is entered into, of the contract price), ☐$ _____ ,OR ☐ in accordance
   with Broker's attached schedule of compensation; as follows:
      **(1)** If during the Listing Period, or any extension, Broker, cooperating broker, Owner or any other person procures a ready,
      willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Owner, provided the
      Buyer completes the transaction or is prevented from doing so by Owner. (Broker is entitled to compensation whether any
      escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      **(2)** If within _____180_____ calendar days after the end of the Listing Period or any extension, Owner enters into a contract to sell,
      lease, exchange, option, convey or otherwise transfer the Property to anyone ("Prospective Transferee") or that person's
      related entity: (i) who physically entered and was shown the Property during the Listing Period, or any extension by Broker or
      a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Owner a signed, written offer to acquire,
      lease, exchange or obtain an option on the Property. Owner, however, shall have no obligation to Broker under this
      paragraph 4A(2) unless, not later than **3 calendar days** after the end of the Listing Period or any extension thereof, Broker
      has given Owner a written notice of the names of such Prospective Transferees.
      **(3)** If, without Broker's prior written consent, the Property is withdrawn from sale, lease, exchange, option or other, as specified
      in paragraph 1, or is sold, conveyed, leased, rented, exchanged, optioned or otherwise transferred, or made unmarketable
      by a voluntary act of Owner during the Listing Period, or any extension thereof.
   **B.** If completion of the transaction is prevented by a party to the transaction other than Owner, then compensation due under
   paragraph 4A shall be payable only if and when Broker collects damages by suit, arbitration, settlement, or otherwise, and then
   in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and
   escrow expenses and the expenses of collection, if any.
   **C.** In addition, Owner agrees to pay Broker: _____
   **D.** **(1)** Broker is authorized to cooperate and compensate brokers participating through the multiple listing service(s) ("MLS"): (i) by
      offering MLS brokers either: ☒ _____2.500_____ percent of the purchase price, or ☐$ _____ ;OR (ii)
      (if checked) ☐ as per Broker's policy.
      **(2)** Broker is authorized to cooperate and compensate brokers operating outside the MLS as per Broker's policy.
   **E.** Owner hereby irrevocably assigns to Broker the above compensation from Owner's funds and proceeds in escrow. Broker may
   submit this Listing Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the
   Property involving Owner and a buyer, transferee or Prospective Transferee.
   **F.** **(1)** Owner represents that Owner has not previously entered into a listing agreement with another broker regarding the
      Property, unless specified as follows: _____
      **(2)** Owner warrants that Owner has no obligation to pay compensation to any other broker regarding the Property unless the
      Property is transferred to any of the following Prospective Transferees: _____
      **(3)** If the Property is transferred to anyone listed above during the time Owner is obligated to compensate another broker: (i)
      Broker is not entitled to compensation under this Listing Agreement; and (ii) Broker is not obligated to represent Owner in
      such transaction.

Owner's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

© 2013, California Association of REALTORS®, Inc.
**VLL REVISED 7/13 (PAGE 1 OF 5)**

EQUAL HOUSING
OPPORTUNITY

0 Via Pino 006

**VACANT LAND LISTING AGREEMENT (VLL PAGE 1 OF 5)**

CALIFORNIA
ASSOCIATION
OF REALTORS®

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 11/13)

Property Address: _____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that you have no disclosure duty "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2013, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

**SA REVISED 11/13 (PAGE 1 OF 2)**

Seller's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____



EQUAL HOUSING
OPPORTUNITY

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

Property Address: _0 Via Pino_ _Temecula, CA  92590_____ Date: _____

## 3. CONTRACT TERMS AND LEGAL REQUIREMENTS:

**A. Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

**B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

**C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

**D. Government Retrofit Standards:** Unless exempt, you must comply with government retrofit standards, including, but not limited to, installing operable smoke detectors, bracing water heaters, and providing the buyer with corresponding written statements of compliance. Some city and county governments may impose additional retrofit standards, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine the retrofit standards for your Property, the extent to which your Property complies with such standards, and the costs, if any, of compliance.

**E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

**F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

## 4. MARKETING CONSIDERATIONS:

**A. Pre-Sale Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional home inspections prior to sale, both generally, and for wood destroying pests and organisms, such as termites. By doing this, you then have an opportunity to make repairs before your Property is offered for sale, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a pest control report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

**B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

**C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

**D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

## 5. OTHER ITEMS: _____
_____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____  Date _____

Print Name _Wai Hung Cheng_____

Seller _____  Date _____

Print Name _____

Real Estate Broker _____Keller Williams Realty_____ By _____Edward Reader_____ Date _____
                                                            (Agent)

Address _27290 Madison Ave. Ste 200_  City _Temecula_ State _CA_ Zip _92590_

Telephone _(951)834-7310_ Fax _(951)301-8738_ E-mail _edreader@kgbss.dot.com_

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |

**SA REVISED 11/13 (PAGE 2 OF 2)**

## SELLER'S ADVISORY (SA PAGE 2 OF 2)

**CALIFORNIA ASSOCIATION OF REALTORS**®

# VACANT LAND LISTING AGREEMENT
### (C.A.R. Form VLL, Revised 7/13)

Wai Tak Cheng

**1. EXCLUSIVE AUTHORIZATION:** _("Owner")_
hereby employs and grants _Keller Williams Realty_ ("Broker") beginning
(date) _December 12, 2014_ and ending at 11:59 P.M. on (date) _December 11, 2015_ ("Listing Period") the
exclusive and irrevocable right to: ☒SELL, ☐LEASE, ☐EXCHANGE, ☐OPTION, or ☐OTHER _____
the real property in the City of _Temecula_, County of _Riverside_, California, Assessor's
Parcel No.: _938-050-004_, described as: _0 Via Pino_ ("Property").

**2. ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in an agreement between Owner and transferee, all fixtures and
fittings that are attached to the Property are included, and personal property items are excluded from the price.
**ADDITIONAL ITEMS EXCLUDED:** _____
**ADDITIONAL ITEMS INCLUDED:** _____
Owner intends that the above items be excluded or included in listing the Property, but understands that: (i) the Agreement
between owner and transferee supersedes any intention expressed above and will ultimately determine which items are excluded
and included in the transaction; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or
inclusions will be in the Agreement between Owner and transferee.

**3. LISTING PRICE AND TERMS:**
  **A.** The listing price shall be _Three Hundred Eighty-Eight Thousand_
    Dollars ($ _388,000.00_ ).
  **B.** Additional Terms: _____

**4. COMPENSATION TO BROKER:**
**Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may
be negotiable between Owner and Broker (real estate commissions include all compensation and fees to Broker).**
  **A.** Owner agrees to pay to Broker as compensation for services irrespective of agency relationship(s): ☒ _6.000_ percent of the
listing price (or if an agreement is entered into, of the contract price), ☐$ _____,OR ☐ in accordance
with Broker's attached schedule of compensation; as follows:
    **(1)** If during the Listing Period, or any extension, Broker, cooperating broker, Owner or any other person procures a ready,
willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Owner, provided the
Buyer completes the transaction or is prevented from doing so by Owner. (Broker is entitled to compensation whether any
escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
    **(2)** If within _180_ calendar days after the end of the Listing Period or any extension, Owner enters into a contract to sell,
lease, exchange, option, convey or otherwise transfer the Property to anyone ("Prospective Transferee") or that person's
related entity: (i) who physically entered and was shown the Property during the Listing Period, or any extension by Broker or
a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Owner a signed, written offer to acquire,
lease, exchange or obtain an option on the Property. Owner, however, shall have no obligation to Broker under this
paragraph 4A(2) unless, not later than **3 calendar days** after the end of the Listing Period or any extension thereof, Broker
has given Owner a written notice of the names of such Prospective Transferees.
    **(3)** If, without Owner's prior written consent, the Property is withdrawn from sale, lease, exchange, option or other, as specified
in paragraph 1, or is sold, conveyed, leased, rented, exchanged, optioned or otherwise transferred, or made unmarketable
by a voluntary act of Owner during the Listing Period, or any extension thereof.
  **B.** If completion of the transaction is prevented by a party to the transaction other than Owner, then compensation due under
paragraph 4A shall be payable only if and when Broker collects damages by suit, arbitration, settlement, or otherwise, and then
in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and
escrow expenses and the expenses of collection, if any.
  **C.** In addition, Owner agrees to pay Broker: _____
  **D. (1)** Broker is authorized to cooperate and compensate brokers participating through the multiple listing service(s) ("MLS"): (i) by
offering MLS brokers either: ☒ _3.000_ percent of the purchase price, or ☐$ _____ ;OR (ii)
(if checked) ☐ as per Broker's policy.
    **(2)** Broker is authorized to cooperate and compensate brokers operating outside the MLS as per Broker's policy.
  **E.** Owner hereby irrevocably assigns to Broker the above compensation from Owner's funds and proceeds in escrow. Broker may
submit this Listing Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the
Property involving Owner and a buyer, transferee or Prospective Transferee.
  **F. (1)** Owner represents that Owner has not previously entered into a listing agreement with another broker regarding the
Property, unless specified as follows: _____
    **(2)** Owner warrants that Owner has no obligation to pay compensation to any other broker regarding the Property unless the
Property is transferred to any of the following Prospective Transferees: _____
    **(3)** If the Property is transferred to anyone listed above during the time Owner is obligated to compensate another broker: (i)
Broker is not entitled to compensation under this Listing Agreement; and (ii) Broker is not obligated to represent Owner in
such transaction.

Owner's Initials ( X _____ ) ( _____ )
Reviewed by _____ Date _____

© 2013, California Association of REALTORS®, Inc.
**VLL REVISED 7/13 (PAGE 1 OF 5)**
Keller Williams Realty, 27290 Madison Ave, Ste 200 Temecula, CA 92590      Phone: 951.834.7310      Fax: 951.301.8738      0 Via Pino 004
Edward Beaudet      Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

EQUAL HOUSING OPPORTUNITY



CALIFORNIA
ASSOCIATION
OF REALTORS®

# SELLER'S ADVISORY
(C.A.R. Form SA, Revised 11/13)

Property Address: 0 Via Pino, Temecula, CA 92590 _____ ("Property")

**1. INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

**2. DISCLOSURES:**

**A. General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.

**B. Statutory Duties:** (For one-to-four Residential Units):

**(1)** You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.

**(2)** Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.

**(3)** If you know that your property is: **(i)** located within one mile of a former military ordnance location; or **(ii)** in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").

**(4)** If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.

**C. Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."

**D. Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2013, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

**SA REVISED 11/13 (PAGE 1 OF 2)**

| Seller's Initials ( _____ ) ( _____ ) |
|---|
| Reviewed by _____ Date _____ |



## SELLER'S ADVISORY (SA PAGE 1 OF 2)

Property Address: _Temecula, CA 92590_____ Date: _____

**3. CONTRACT TERMS AND LEGAL REQUIREMENTS:**

**A. Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

**B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

**C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

**D. Government Retrofit Standards:** Unless exempt, you must comply with government retrofit standards, including, but not limited to, installing operable smoke detectors, bracing water heaters, and providing the buyer with corresponding written statements of compliance. Some city and county governments may impose additional retrofit standards, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine the retrofit standards for your Property, the extent to which your Property complies with such standards, and the costs, if any, of compliance.

**E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

**F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

**4. MARKETING CONSIDERATIONS:**

**A. Pre-Sale Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional home inspections prior to sale, both generally, and for wood destroying pests and organisms, such as termites. By doing this, you then have an opportunity to make repairs before your Property is offered for sale, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a pest control report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

**B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

**C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

**D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

**5. OTHER ITEMS:** _____
_____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____ Date _____

Print Name _Wu Tek Cheng_____

Seller _____ Date _____

Print Name _____

Real Estate Broker _____Keller Williams Realty_____ By ____Edward Kasmar_____ Date _____

(Agent) _Edward Kasmar_

Address _27290 Madison Ave Ste 200_ City _Temecula_ State _CA_ Zip _92590_

Telephone _(951)834-7210_ Fax _(951)331-8738_ E-mail _edgarauder@whheaudet.com_

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |



**SA REVISED 11/13 (PAGE 2 OF 2)**

# CALIFORNIA ASSOCIATION OF REALTORS®

## VACANT LAND LISTING AGREEMENT
### (C.A.R. Form VLL, Revised 7/13)

Marcie Von Chan, Garwin Von Chan

1. **EXCLUSIVE AUTHORIZATION:** ___ ("Owner")
hereby employs and grants ___ Keller Williams Realty ___ ("Broker") beginning
(date) ___ December 12, 2014 ___ and ending at 11:59 P.M. on (date) ___ December 11, 2015 ___ ("Listing Period") the
exclusive and irrevocable right to: ☒SELL, ☐LEASE, ☐EXCHANGE, ☐OPTION, or ☐OTHER ___
the real property in the City of ___ Temecula ___, County of ___ Riverside ___, California, Assessor's
Parcel No. : ___ 938-110-012 ___, described as: ___ 0 Via Vaquero ___ ("Property").

2. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in an agreement between Owner and transferee, all fixtures and
fittings that are attached to the Property are included, and personal property items are excluded from the price.
**ADDITIONAL ITEMS EXCLUDED:** ___ .
**ADDITIONAL ITEMS INCLUDED:** ___ .
Owner intends that the above items be excluded or included in listing the Property, but understands that: (i) the Agreement
between owner and transferee supersedes any intention expressed above and will ultimately determine which items are excluded
and included in the transaction; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or
inclusions will be in the Agreement between Owner and transferee.

3. **LISTING PRICE AND TERMS:**
   **A.** The listing price shall be ___ Three Hundred Eighty-Eight Thousand ___
   ___ Dollars ($ 388,000.00 ___ ).
   **B.** Additional Terms: ___

4. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may
   be negotiable between Owner and Broker (real estate commissions include all compensation and fees to Broker).**
   **A.** Owner agrees to pay to Broker as compensation for services irrespective of agency relationship(s): ☒ 6.000 percent of the
   listing price (or if an agreement is entered into, of the contract price), ☐$ ___ ,OR ☐ in accordance
   with Broker's attached schedule of compensation; as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Owner or any other person procures a ready,
   willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Owner, provided the
   Buyer completes the transaction or is prevented from doing so by Owner. (Broker is entitled to compensation whether any
   escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      (2) If within ___ 180 ___ calendar days after the end of the Listing Period or any extension, Owner enters into a contract to sell,
   lease, exchange, option, convey or otherwise transfer the Property to anyone ("Prospective Transferee") or that person's
   related entity: (i) who physically entered and was shown the Property during the Listing Period, or any extension by Broker or
   a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Owner a signed, written offer to acquire,
   lease, exchange or obtain an option on the Property. Owner, however, shall have no obligation to Broker under this
   paragraph 4A(2) unless, not later than **3 calendar days** after the end of the Listing Period or any extension thereof, Broker
   has given Owner a written notice of the names of such Prospective Transferees.
      (3) If, without Broker's prior written consent, the Property is withdrawn from sale, lease, exchange, option or other, as specified
   in paragraph 1, or is sold, conveyed, leased, rented, exchanged, optioned or otherwise transferred, or made unmarketable
   by a voluntary act of Owner during the Listing Period, or any extension thereof.
   **B.** If completion of the transaction is prevented by a party to the transaction other than Owner, then compensation due under
   paragraph 4A shall be payable only if and when Owner collects damages by suit, arbitration, settlement, or otherwise, and then
   in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and
   escrow expenses and the expenses of collection, if any.
   **C.** In addition, Owner agrees to pay Broker: ___
   **D.** (1) Broker is authorized to cooperate and compensate brokers participating through the multiple listing service(s) ("MLS"): (i) by
   offering MLS brokers either: ☒ 3.000 percent of the purchase price, or ☐$ ___ ;OR (ii)
   (if checked) ☐ as per Broker's policy.
      (2) Broker is authorized to cooperate and compensate brokers operating outside the MLS as per Broker's policy.
   **E.** Owner hereby irrevocably assigns to Broker the above compensation from Owner's funds and proceeds in escrow. Broker may
   submit this Listing Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the
   Property involving Owner and a buyer, transferee or Prospective Transferee.
   **F.** (1) Owner represents that Owner has not previously entered into a listing agreement with another broker regarding the
   Property, unless specified as follows: ___
      (2) Owner warrants that Owner has no obligation to pay compensation to any other broker regarding the Property unless the
   Property is transferred to any of the following Prospective Transferees: ___
      (3) If the Property is transferred to anyone listed above during the time Owner is obligated to compensate another broker: (i)
   Broker is not entitled to compensation under this Listing Agreement; and (ii) Broker is not obligated to represent Owner in
   such transaction.

Owner's Initials ( X ___ ) ( ___ )
Reviewed by ___ Date ___

© 2013, California Association of REALTORS®, Inc.
**VLL REVISED 7/13 (PAGE 1 OF 5)**

EQUAL HOUSING OPPORTUNITY

## VACANT LAND LISTING AGREEMENT (VLL PAGE 1 OF 5)

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# SELLER'S ADVISORY
**(C.A.R. Form SA, Revised 11/13)**

Property Address: 0 Via Vaquero, Temecula, CA 92590 _____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.

   B. **Statutory Duties:** (For one-to-four Residential Units):
   (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
   (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
   (3) If you know that your property is: **(i)** located within one mile of a former military ordnance location; or **(ii)** in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
   (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.

   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that you have no disclosure duty "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."

   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

The copyright laws of the United States (Title 17 U.S. Code) forbid the
unauthorized reproduction of this form, or any portion thereof, by photocopy
machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2013, CALIFORNIA ASSOCIATION OF REALTORS®,
INC. ALL RIGHTS RESERVED.

**SA REVISED 11/13 (PAGE 1 OF 2)**

| Seller's Initials ( _____ ) ( _____ ) |
| Reviewed by _____ Date _____ |



## SELLER'S ADVISORY (SA PAGE 1 OF 2)

Property Address: _Temecula, CA 92590_ _____ Date: _____

**3. CONTRACT TERMS AND LEGAL REQUIREMENTS:**

    **A. Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

    **B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

    **C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

    **D. Government Retrofit Standards:** Unless exempt, you must comply with government retrofit standards, including, but not limited to, installing operable smoke detectors, bracing water heaters, and providing the buyer with corresponding written statements of compliance. Some city and county governments may impose additional retrofit standards, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine the retrofit standards for your Property, the extent to which your Property complies with such standards, and the costs, if any, of compliance.

    **E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

    **F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

**4. MARKETING CONSIDERATIONS:**

    **A. Pre-Sale Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional home inspections prior to sale, both generally, and for wood destroying pests and organisms, such as termites. By doing this, you then have an opportunity to make repairs before your Property is offered for sale, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a pest control report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

    **B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

    **C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

    **D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

**5. OTHER ITEMS:** _____
_____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____ Date _____

Print Name _Marcie Yen Chan_

Seller _____ Date _____

Print Name _Garwin Yen Chan_

Real Estate Broker _____Keller Williams Realty_____ By _Edward Beaudet_ Date _____
                                     **(Agent)** _Edward Beaudet_

Address _27290 Madison Ave. Ste 200_ City _Temecula_ State _CA_ Zip _92590_

Telephone _(951)834-7510_ Fax _(951)303-8728_ E-mail _edbeaudet@edbeaudet.com_

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
| --- |



**SA REVISED 11/13 (PAGE 2 OF 2)**

**CALIFORNIA ASSOCIATION OF REALTORS®**

# VACANT LAND LISTING AGREEMENT
### (C.A.R. Form VLL, Revised 7/13)

*Shu Lee Cheng Chien*

**1. EXCLUSIVE AUTHORIZATION:** ___("Owner")___
hereby employs and grants ___Keller Williams Realty___ ("Broker") beginning
(date) ___December 12, 2014___ and ending at 11:59 P.M. on (date) ___December 11, 2015___ ("Listing Period") the
exclusive and irrevocable right to: ☒SELL, ☐LEASE, ☐EXCHANGE, ☐OPTION, or ☐OTHER ___
the real property in the City of ___Temecula___, County of ___Riverside___, California, Assessor's
Parcel No. ___938-050-003___, described as: ___0 Via Pino___ ("Property").

**2. ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in an agreement between Owner and transferee, all fixtures and
fittings that are attached to the Property are included, and personal property items are excluded from the price.
**ADDITIONAL ITEMS EXCLUDED:** ___.
**ADDITIONAL ITEMS INCLUDED:** ___.
Owner intends that the above items be excluded or included in listing the Property, but understands that: (i) the Agreement
between owner and transferee supersedes any intention expressed above and will ultimately determine which items are excluded
and included in the transaction; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or
inclusions will be in the Agreement between Owner and transferee.

**3. LISTING PRICE AND TERMS:**
   **A.** The listing price shall be ___Three Hundred Eighty-Eight Thousand___
___ Dollars ($ ___388,000.00___ ).
   **B.** Additional Terms: ___

**4. COMPENSATION TO BROKER:**
**Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may
be negotiable between Owner and Broker (real estate commissions include all compensation and fees to Broker).**
   **A.** Owner agrees to pay to Broker as compensation for services irrespective of agency relationship(s): ☒ ___6.000___ percent of the
listing price (or if an agreement is entered into, of the contract price), ☐$ ___,OR ☐ in accordance
with Broker's attached schedule of compensation; as follows:
      **(1)** If during the Listing Period, or any extension, Broker, cooperating broker, Owner or any other person procures a ready,
willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Owner, provided the
Buyer completes the transaction or is prevented from doing so by Owner. (Broker is entitled to compensation whether any
escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      **(2)** If within ___180___ calendar days after the end of the Listing Period or any extension, Owner enters into a contract to sell,
lease, exchange, option, convey or otherwise transfer the Property to anyone ("Prospective Transferee") or that person's
related entity: (i) who physically entered and was shown the Property during the Listing Period, or any extension by Broker or
a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Owner a signed, written offer to acquire,
lease, exchange or obtain an option on the Property. Owner, however, shall have no obligation to Broker under this
paragraph 4A(2) unless, not later than **3 calendar days** after the end of the Listing Period or any extension thereof, Broker
has given Owner a written notice of the names of such Prospective Transferees.
      **(3)** If, without Broker's prior written consent, the Property is withdrawn from sale, lease, exchange, option or other, as specified
in paragraph 1, or is sold, conveyed, leased, rented, exchanged, optioned or otherwise transferred, or made unmarketable
by a voluntary act of Owner during the Listing Period, or any extension thereof.
   **B.** If completion of the transaction is prevented by a party to the transaction other than Owner, then compensation due under
paragraph 4A shall be payable only if and when Owner collects damages by suit, arbitration, settlement, or otherwise, and then
in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and
escrow expenses and the expenses of collection, if any.
   **C.** In addition, Owner agrees to pay Broker: ___
   **D. (1)** Broker is authorized to cooperate and compensate brokers participating through the multiple listing service(s) ("MLS"): (i) by
offering MLS brokers either: ☒ ___3.000___ percent of the purchase price, or ☐$ ___;OR (ii)
(if checked) ☐ as per Broker's policy.
      **(2)** Broker is authorized to cooperate and compensate brokers operating outside the MLS as per Broker's policy.
   **E.** Owner hereby irrevocably assigns to Broker the above compensation from Owner's funds and proceeds in escrow. Broker may
submit this Listing Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the
Property involving Owner and a buyer, transferee or Prospective Transferee.
   **F. (1)** Owner represents that Owner has not previously entered into a listing agreement with another broker regarding the
Property, unless specified as follows: ___
      **(2)** Owner warrants that Owner has no obligation to pay compensation to any other broker regarding the Property unless the
Property is transferred to any of the following Prospective Transferees: ___
      **(3)** If the Property is transferred to anyone listed above during the time Owner is obligated to compensate another broker: (i)
Broker is not entitled to compensation under this Listing Agreement; and (ii) Broker is not obligated to represent Owner in
such transaction.

| | |
|---|---|
| Owner's Initials ( ___ ) ( ___ ) | |
| Reviewed by ___ Date ___ | |

© 2013, California Association of REALTORS®, Inc.
**VLL REVISED 7/13 (PAGE 1 OF 5)**



EQUAL HOUSING
OPPORTUNITY

**VACANT LAND LISTING AGREEMENT (VLL PAGE 1 OF 5)**

CALIFORNIA
ASSOCIATION
OF REALTORS®

# SELLER'S ADVISORY
### (C.A.R. Form SA, Revised 11/13)

Property Address: 0 Via Pino, Temecula, CA 92590 _____ ("Property")

**1. INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

**2. DISCLOSURES:**

**A. General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.

**B. Statutory Duties:** (For one-to-four Residential Units):

   **(1)** You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.

   **(2)** Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.

   **(3)** If you know that your property is: **(i)** located within one mile of a former military ordnance location; or **(ii)** in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").

   **(4)** If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.

**C. Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that you have no disclosure duty "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."

**D. Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

The copyright laws of the United States (Title 17 U.S. Code) forbid the
unauthorized reproduction of this form, or any portion thereof, by photocopy
machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2013, CALIFORNIA ASSOCIATION OF REALTORS®,
INC. ALL RIGHTS RESERVED.

**SA REVISED 11/13 (PAGE 1 OF 2)**

| Seller's Initials ( _____ ) ( _____ ) |
| Reviewed by _____ Date _____ |



EQUAL HOUSING
OPPORTUNITY

### SELLER'S ADVISORY (SA PAGE 1 OF 2)

0 Via Pino

Property Address: _Temecula, CA  92590_____ Date: _____

## 3. CONTRACT TERMS AND LEGAL REQUIREMENTS:

**A. Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

**B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

**C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

**D. Government Retrofit Standards:** Unless exempt, you must comply with government retrofit standards, including, but not limited to, installing operable smoke detectors, bracing water heaters, and providing the buyer with corresponding written statements of compliance. Some city and county governments may impose additional retrofit standards, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine the retrofit standards for your Property, the extent to which your Property complies with such standards, and the costs, if any, of compliance.

**E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

**F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

## 4. MARKETING CONSIDERATIONS:

**A. Pre-Sale Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional home inspections prior to sale, both generally, and for wood destroying pests and organisms, such as termites. By doing this, you then have an opportunity to make repairs before your Property is offered for sale, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a pest control report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

**B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

**C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

**D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

## 5. OTHER ITEMS: _____
_____
_____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____ Date _____

Print Name _Siu Lee_

Seller _____ Date _____

Print Name _Cheng Chun_

Real Estate Broker _____Keller Williams Realty_____ By _____ Date _____
                                                                    (Agent) _Edward Rouvier_

Address _27290 Madison Ave. Ste 200_____ City _Temecula_____ State _CA___ Zip _92590_

Telephone _(951)634-7310____ Fax _(951)301-8738____ E-mail _edbeaulieu@bbeaulieu.com_

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
| --- |

SA REVISED 11/13 (PAGE 2 OF 2)

## SELLER'S ADVISORY (SA PAGE 2 OF 2)



2334 Huntington Drive
San Marino, CA 91108

Phone: (626) 291-2232
Fax: (626) 513-8836

WAI TAK CHENG
44765 Via Pino
Temecula, CA 92590

Date: June 7, 2017
Escrow No. 06-312136-CS
Re: VACANT LAND,
     LAKE ELSINORE, CA

Dear WAI:

The above referenced escrow closed on June 6, 2017. In connection therewith, we are enclosing the following documents:

    Check representing your net proceeds of $54,084.30
    Closing Statement (PLEASE RETAIN FOR INCOME TAX PURPOSES)

Your escrow will be held by our office for a period of five years from the close of escrow. We appreciate having had the opportunity of serving you.

Sincerely,
American Trust Escrow

Charlene Sung
Escrow Officer



2334 Huntington Drive
San Marino, CA 91108

Phone: (626) 291-2232
Fax: (626) 513-8836

# SELLER'S FINAL SETTLEMENT STATEMENT

| | |
|---|---|
| **PROPERTY:** VACANT LAND<br>LAKE ELSINORE, CA | **DATE:** June 6, 2017 |
| **SELLER:** WAI TAK CHENG | **CLOSING DATE:** June 6, 2017<br>**ESCROW NO.:** 06-312136-CS |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 75,000.00 |
| **PRORATIONS/ADJUSTMENTS** | | |
| 2nd half property taxes 2016-2017 at $1,546.90/semi-annually from 06/06/2017 to 07/01/2017 | | 214.85 |
| **COMMISSION CHARGES** | | |
| COLDWELL BANKER GEORGE REALTY | 3,750.00 | |
| REMAX ADVANCED REALTY | 3,750.00 | |
| **OTHER DEBITS/CREDITS** | | |
| Disclosure Source for Property Disclosures | 99.00 | |
| **TITLE/TAXES/RECORDING CHARGES - First American Title Company of Los Angeles** | | |
| Title - Owner's Title Insurance | 530.00 | |
| Title - Sub Escrow Fee | 125.00 | |
| Transfer Tax - County to Riverside County | 82.50 | |
| Delinquent Taxes -APN: 375-024-052-0 | 180.45 | |
| Delinquent Taxes-APN: 375-024-053-1 to Riverside County Tax Collector | 180.45 | |
| Delinquent Taxes- APN: 375-024-070-6 | 156.13 | |
| Delinquent Taxes-APN: 375-024-07²9 | 180.45 | |
| Delinquent Taxes- APN: 375-024-074-0 | 276.07 | |
| Delinquent Taxes - APN: 375-024-075-1 | 180.45 | |
| Delinquent Taxes - APN: 375-024-085-0 | 171.77 | |
| Delinquent Taxes - APN: 375-051-003-0 | 144.85 | |
| Delinquent Taxes - APN: 375-051-004-1 | 144.85 | |
| Delinquent Taxes - APN: 375-061-026-2 | 156.13 | |
| Delinquent Taxes - APN: 375-063-008-2 | 204.51 | |
| Delinquent Taxes -APN:375-063-009-3 to Riverside County | 212.99 | |
| Delinquent Taxes-APN: 375-063-010-3 to City of LAKE ELSINORE | 204.51 | |
| Delinquent Taxes- APN: 375-071-024-1 | 156.13 | |
| Delinquent Taxes APN: 375-071-100-6 to Riverside County Tax Collector | 156.13 | |
| Delinquent Taxes APN: 375-152-060-3 | 160.17 | |
| Delinquent Taxes 375-152-061-4 | 160.17 | |
| Delinquent Taxes- APN: 375-152-062-5 | 160.17 | |
| Delinquent Taxes-APN: 375-152-072-4 | 156.13 | |
| Delinquent Taxes- APN: 375-152-073-5 | 156.13 | |
| Delinquent Taxes -APN:375-153-019-0 | 156.13 | |
| Delinquent Taxes-APN:375-153-064-0 | 156.13 | |

Case 6:17-bk-19494-SC    Doc 28    Filed 12/01/17    Entered 12/01/17 09:23:59    Desc
Date:  June 6, 2017                  Main Document      Page 34 of 38   Escrow No.: 06-312136-CS

Page 2 of 2:

| | DEBITS | CREDITS |
|---|---|---|
| Delinquent Taxes-APN: 375-214-013-2 | 153.37 | |
| Delinquent Taxes -APN: 375-214-014-3 | 153.37 | |
| Delinquent Taxes-APN: 375-223-024-0 to Riverside County | 144.85 | |
| Delinquent Taxes-APN: 375-223-025-1 to City of LAKE ELSINORE | 144.85 | |
| Delinquent Taxes | 198.32 | |
| Delinquent Taxes to Riverside County Tax Collector | 198.32 | |
| Delinquent Taxes | 208.07 | |
| Delinquent Taxes | 1,004.89 | |
| Delinquent Taxes | 997.12 | |
| Delinquent Taxes | 211.24 | |
| Delinquent Taxes | 276.47 | |
| Delinquent Taxes | 266.75 | |
| Delinquent Taxes | 266.72 | |
| Delinquent Taxes | 239.12 | |
| Delinquent Taxes | 239.12 | |
| Delinquent Taxes to Riverside County | 239.12 | |
| Delinquent Taxes to City of LAKE ELSINORE | 348.81 | |
| Delinquent Taxes | 239.12 | |
| Delinquent Taxes to Riverside County Tax Collector | 229.16 | |
| Delinquent Taxes | 211.24 | |
| Delinquent Taxes | 211.24 | |
| Delinquent Taxes | 211.24 | |
| Delinquent Taxes | 211.24 | |
| Delinquent Taxes | 211.24 | |
| Delinquent Taxes | 215.87 | |
| Delinquent Taxes | 215.87 | |
| Delinquent Taxes | 211.24 | |
| Delinquent Taxes | 211.24 | |
| Delinquent Taxes to Riverside County | 208.07 | |
| Delinquent Taxes to City of LAKE ELSINORE | 215.87 | |
| | | |
| **ESCROW CHARGES - American Trust Escrow** | | |
| Title - Escrow Fee | 600.00 | |
| Title - Archive Fee | 40.00 | |
| Title - Document Preparation Fee | 250.00 | |
| | | |
| **Net Proceeds** | 54,084.30 | |
| | | |
| **TOTAL** | $   75,214.85 | $   75,214.85 |

**SAVE THIS STATEMENT FOR INCOME TAX PURPOSES**

# Herman & Terence Account

| DATE | DESCRIPTIONS | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| 2012-13 | Property Tax | 6,744.14 | 6,744.14 |
| 2013-14 | Property Tax | 7,150.30 | 13,894.44 |
| 2014-15 | Property Tax | 7,266.20 | 21,160.64 |
| Sep-14 | Terrence's Children borrow money | 2,500.00 | 23,660.64 |
| Dec-14 | Terrence's Children borrow money | 4,000.00 | 27,660.64 |
| 2015-16 | Property Tax | 7,885.00 | 35,545.64 |
| Jun-16 | Terrence's children borrow money | 2,000.00 | 37,545.64 |
| Jan-17 | Terrence's children borrow money | 2,000.00 | 39,545.64 |
| 2016-17 | Property Tax | 7,965.78 | 47,511.42 |
| Jan-17 | Terrence's wife borrow money | 2,500.00 | 50,011.42 |
| Feb-17 | Terrence's wife borrow money | 5,000.00 | 55,011.42 |
| Feb-17 | Herman's wife borrow money | 5,000.00 | 60,011.42 |
| 2017-18 | Property Tax | 120.00 | 60,131.42 |
| 6/13/2017 | Sales of 26 lots (50% of net proceeds) | (54,084.30) | 6,047.12 |
| 9/28/2017 | Sale of Herman's land : APN:938050006 | (184,652.26) | (178,605.14) |
| Oct-17 | Wire to Helen | 92,326.00 | (86,279.14) |
| Oct-17 | Wire to Lilly | 92,326.00 | 6,046.86 |





**2334 Huntington Drive**
**San Marino, CA 91108**

**Phone: (626) 291-2232**
**Fax:  (626) 513-8836**

MR. WAI HUNG CHENG
44765 VIA PINO (#938-050-006)
TEMECULA, CA  92590

Date:  September 28, 2017
Escrow No. 020184-CS
Re: 44765 VIA PINO (#938-050-006),
      TEMECULA, CA 92590

Dear MR. CHENG:

The above referenced escrow closed on September 27, 2017. In connection therewith, we are enclosing the following documents:

      Check representing your net proceeds of $184,652.26
      Closing Statement (PLEASE RETAIN FOR INCOME TAX PURPOSES)

Your escrow will be held by our office for a period of five years from the close of escrow.  We appreciate having had the opportunity of serving you.

Sincerely,
Glen Oaks Escrow, Inc.

Charlene Sung
Escrow Officer



**GLEN OAKS**
escrow

2334 Huntington Drive
San Marino, CA 91108

Phone: (626) 291-2232
Fax: (626) 513-8836

## SELLER'S FINAL SETTLEMENT STATEMENT

**PROPERTY:** 44765 VIA PINO (#938-050-006)
TEMECULA, CA 92590

**SELLER:** WAI HUNG CHENG

**CLOSING DATE:** September 27, 2017
**ESCROW NO.:** 020184-CS

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 200,000.00 |
| | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $1,591.56/semi-annually from 07/01/2017 to 09/27/2017 | 760.41 | |
| Prorated HOA due at $60.00/annually from 09/27/2017 to 01/01/2018 | | 15.67 |
| | | |
| **COMMISSION CHARGES** | | |
| COLDWELL BANKER GEORGE REALTY | 6,000.00 | |
| COLDWELL BANKER GEORGE REALTY | 6,000.00 | |
| | | |
| **H.O.A./MANAGEMENT** | | |
| Transfer Fee/Document fee to Ralston Management | 450.00 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| COLDWELL BANKER GEORGE REALTY for TC Fee | 295.00 | |
| Disclosure Source for Property Disclosures | 99.00 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES - First American Title Company** | | |
| Title - Owner's Title Insurance | 839.00 | |
| Transfer Tax - County to Riverside County | 220.00 | |
| | | |
| **ESCROW CHARGES - Glen Oaks Escrow, Inc.** | | |
| Title - Escrow Fee | 660.00 | |
| Title - Courtesy fee | -250.00 | |
| Title - Archive Fee | 40.00 | |
| Title - Document Preparation Fee | 250.00 | |
| | | |
| **Net Proceeds** | 184,652.26 | |
| | | |
| **TOTAL** | $ 200,015.67 | $ 200,015.67 |

## SAVE THIS STATEMENT FOR INCOME TAX PURPOSES

## PERSONAL VALUE CHECKING, *0296

**All completed transactions from 09/27/2017 to 11/21/2017**

| Date | Number | Description | Withdrawals | Deposits | Balance |
|------|--------|-------------|-------------|----------|---------|
| 10/16/2017 | | DIRECT S/C INT'L WIRE FEE DR | 40.00 | | 36,765.19 |
| 10/16/2017 | | OUTGOING WIRE-INT'L OUTGOING WIRE 20172890219300; BNF CHEUNG HOI LUN HELEN;REF | 92,326.00 | | 36,805.19 |
| 10/16/2017 | | DIRECT S/C INT'L WIRE FEE DR | 40.00 | | 129,131.19 |
| 10/16/2017 | | OUTGOING WIRE-INT'L OUTGOING WIRE 20172890213600; BNF NG LEE LEE LIL Y;REF | 92,326.00 | | 129,171.19 |
| 10/10/2017 | | DEPOSIT | | 84,652.26 | 221,497.19 |
| 10/04/2017 | | DEPOSIT | | 50,000.00 | 136,844.93 |
| 09/29/2017 | | DEPOSIT | | 50,295.00 | 86,844.93 |